UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLINE BARKER,<br><br>                     Plaintiff,<br><br>          v.<br><br>LAUREN MCFERRAN,<br><br>                     Defendant. | Case No.  23-cv-00308-DMR<br><br>**ORDER ON MOTION TO DISMISS**<br>Re: Dkt. No. 32 |

Self-represented Plaintiff Caroline Barker filed a complaint against Lauren McFerran, Chairperson of the National Labor Relations Board ("NLRB"), alleging claims related to her employment with the NLRB.  Defendant now moves pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the complaint.  [Docket No. 32.]  The court held a hearing on October 12, 2023.  For the following reasons, the motion is granted.

## I.    BACKGROUND

Plaintiff makes the following allegations in the complaint, which the court takes as true for purposes of this motion.  Plaintiff is African-American and over the age of 40.  Compl. 3 ¶ 6.  She has been working as a Program Support Assistant at the NLRB's San Francisco office for 22 years.  *Id*. at 4, ¶ 8.  Plaintiff's compensation level is GS-5 Step 10 and she has never received a promotion, step increase, or within grade increase.  *Id*. at 10, ¶ 21; 14 n.4.

Plaintiff submitted a request for an ergonomic assessment and reasonable accommodation at some point.  An NLRB Human Resources Specialist confirmed receipt of the same in January 2009.  *Id*. at 5, ¶ 11, Ex. 1.  An ergonomic analyst assessed Plaintiff in February 2009.  Compl. 5, ¶ 11(3), Exs. 3, 13.  In June 2009, the NLRB's Human Resources division approved a request for an ergonomic chair, while noting that documentation from Plaintiff "does not establish that you are a qualified individual with a disability entitled to accommodation."  Compl. 5, ¶ 11(1), Ex. 2.

United States District Court<br>Northern District of California

1    Plaintiff did not receive an ergonomic chair until 2015.  *See* Compl. Ex. 22 (Oct. 20, 2022 Final

2    Agency Action); Compl. 8, ¶ 16.

3           Plaintiff filed a formal complaint of discrimination with the NLRB's Equal Employment

4    Opportunity office ("EEO") on October 1, 2016, and a revised complaint on October 7, 2016.

5    Compl. 3, ¶ 6; Final Agency Action 1.  In her amended complaint, Plaintiff alleged that the NLRB

6    discriminated against her and retaliated against her when it:

7           1)  failed to timely respond and provide appropriate equipment to
                [Plaintiff's] workstation as a reasonable accommodation; and
8           2)  engaged in retaliatory disparate treatment and adverse actions and
                created a hostile work environment since January 8, 2015.

9

10   *Id*.  Plaintiff identified the following bases for discrimination: race; color (dark complexion);

11   national origin (African-American); sex; age; and disability (mental and physical).  Compl. 3, ¶ 6;

12   Final Agency Action 1.

13          Plaintiff requested a hearing before an administrative judge and the NLRB moved for

14   summary judgment on Plaintiff's claims.  Compl. 3, ¶ 6; Final Agency Action 1.  In March 2022,

15   an administrative judge granted the motion for summary judgment on all claims except the

16   agency's "alleged failure to provide a reasonable accommodation involving its delay in providing

17   [Plaintiff] with an ergonomic chair" and "[t]he agency stipulated to liability on the delay in

18   providing an ergonomic chair."  Final Agency Action 1-2.  The administrative judge then held a

19   hearing on the issue of damages for the failure to accommodate.  *Id*. at 2.  On September 12, 2022,

20   the administrative judge issued a Hearing Decision and Partial Summary Judgment Decision.  In

21   relevant part, the administrative judge awarded Plaintiff $8,625 in compensatory damages for the

22   six-year delay in providing the ergonomic chair as a reasonable accommodation.  *Id*.  The NLRB's

23   EEO issued a Final Agency Action on October 20, 2022 in which it adopted the administrative

24   judge's September 12, 2022 decision in its entirety.  *Id*.

25          Plaintiff filed this lawsuit on January 20, 2023 in which she challenges the October 20,

26   2022 award of $8,625 as "completely and totally inadequate."  Compl. 3, ¶ 7.  She appears to

27   bring the following claims for relief: 1) race, color, national origin, and sex discrimination in

28   violation of Title VII, 42 U.S.C. § 2000e; 2) age discrimination in violation of the Age

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1  Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a; 3) disability discrimination in

2  violation of the Rehabilitation Act, 29 U.S.C. § 791; 4) hostile work environment in violation of

3  Title VII, the ADEA, and the Rehabilitation Act; and 5) retaliation in violation of Title VII, the

4  ADEA, and the Rehabilitation Act.  Compl. 2, 15-17.

5      Defendant moves to dismiss the complaint.  Defendant argues that claims based on

6  conduct before November 24, 2014 must be dismissed for failure to exhaust administrative

7  remedies and that Plaintiff's claims must be dismissed as insufficiently pleaded.  Plaintiff opposes

8  the motion.  [Docket No. 34.][1]

9  **II.      LEGAL STANDARDS**

10     A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in

11  the complaint.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

12  When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all

13  of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)

14  (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or

15  there is an absence of "sufficient factual matter to state a facially plausible claim to relief."

16  *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (citing

17  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.

18  2001)) (quotation marks omitted).  A claim has facial plausibility when a plaintiff "pleads factual

19  content that allows the court to draw the reasonable inference that the defendant is liable for the

20  misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged

21  must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of

22  a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing

23  *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir.

24  2001), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir.

25  2002).

26

27  _____

28  [1] Plaintiff's opposition states that she "reserve[s] the right to counsel for" certain issues.  *See*
Opp'n 5.  This is improper.  In future, Plaintiff must respond to arguments.  The failure to do so
may be construed as a concession.

Pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson*, 551 U.S. at 94.  The Ninth Circuit has held that "where the petitioner is pro se," courts have an obligation, "particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).  "However, a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska,* 673 F.2d 266, 268 (9th Cir. 1982).

### III.   DISCUSSION

#### A.   Exhaustion of Administrative Remedies

##### 1.   Title VII and Rehabilitation Act Claims

A federal employee must exhaust the administrative process required by statute before filing an employment discrimination claim in federal court.  *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 832 (1976); *Sommatino v. United States*, 255 F.3d 704, 707 (9th Cir. 2001) (citing 42 U.S.C. § 2000e-16(c)); *Leorna v. United States Dep't of State*, 105 F.3d 548, 550 (9th Cir. 1997) (individuals claiming disability discrimination under the Rehabilitation Act must exhaust administrative remedies).  "Under the Title VII statutory and regulatory scheme, a federal employee must notify an EEO counselor of discriminatory conduct within 45 days of the alleged conduct, and then, if the matter is not resolved, the employee may submit a formal administrative complaint." *Sommatino*, 255 F.3d at 708.  Failure to initiate administrative action within the 45-day deadline may be "fatal" to an employee's discrimination claims in federal court, absent waiver, estoppel, or equitable tolling.  *Lyons v. England*, 307 F.3d 1092, 1105 (9th Cir. 2002); *Leong v. Potter*, 347 F.3d 1117, 1122 (9th Cir. 2003); *Leorna*, 105 F.3d at 551.

"While not all administrative exhaustion requirements are jurisdictional in nature, Ninth Circuit 'case law holds that substantial compliance with the presentment of discrimination complaints to an appropriate administrative agency *is* a jurisdictional prerequisite.'" *McCarthy v. Brennan*, 230 F. Supp. 3d 1049, 1058 (emphasis in original) (quoting *Sommatino*, 255 F.3d at 709).  However, in *Fort Bend County, Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019), the Supreme Court clarified that "Title VII's charge-filing requirement is a processing one, albeit a mandatory

1    one, not a jurisdictional prescription delineating the adjudicatory authority of courts."  Courts in

2    this district have held that in light of *Fort Bend*, "the administrative complaint requirement for

3    Title VII claims by federal employees is not jurisdictional."  *Williams v. Wolf*, 19-cv-00652-JCS,

4    2019 WL 6311381, at *6 (N.D. Cal. Nov. 25, 2019); *Pringle v. Wheeler*, 478 F. Supp. 3d 899, 908

5    (N.D. Cal. 2020); *Cloud v. Brennan*, 436 F. Supp. 3d 1290, 1302 (N.D. Cal. 2020).  The court

6    finds the analysis in *Williams* persuasive and concludes that the issue of exhaustion of EEO

7    administrative remedies is not jurisdictional.  However, the charge-filing requirement remains a

8    "mandatory processing rule," and a plaintiff "must allege compliance with that requirement . . . in

9    order to state a claim on which relief may be granted."  *Williams*, 2019 WL 6311381, at *6

10   (quoting *Fort Bend*, 139 S. Ct. at 1851) (internal quotation marks omitted).  Therefore, the court

11   will consider Defendant's administrative exhaustion arguments under a Rule 12(b)(6) standard.

12        The complaint does not clearly allege when Plaintiff first contacted an EEO counselor, but

13   Defendant suggests that Plaintiff contacted a counselor on January 8, 2015. Mot. 7 (citing Compl.

14   4-5, ¶ 10(3) ("the Agency engaged in retaliatory disparate treatment and adverse actions and

15   created a hostile work environment since January 8, 2015, continuing through the present.")).  In

16   her opposition, Plaintiff confirms that she initiated contact with the EEO on January 8, 2015.

17   Opp'n 2.  Defendant argues that claims based on acts that occurred more than 45 days before that

18   date, which was November 24, 2014, were not timely exhausted and thus Plaintiff may not assert

19   claims based on events prior to November 24, 2014.  Mot. 7-8.  Defendant notes that the

20   complaint includes claims that may be based on events that pre-date November 24, 2014, as

21   follows:

- Plaintiff's Title VII claim includes the allegation that "[l]ists would be established
  by and through Office Managers," and that her "name would be on the list.
  Everyone on the list received their reasonable accommodation.  Plaintiff did not,"
  citing Ex. 5, which is an email from 2012 about desks.  Compl. 15, ¶ 2.

- Plaintiff's Title VII and ADEA claims include the allegation that Plaintiff
  witnessed non-African-American and younger Program Support Assistants in her
  region "consistent in receiving Ergonomic Reasonable Accommodations;

United States District Court
Northern District of California

5

Promotions; including Within-Grade-Increases; Step-Increases; reassignments; etc."  Compl. 15, ¶ 4; 16, ¶ 1.

- Plaintiff's Rehabilitation Act claim alleges that "during the six year period . . . Plaintiff was consistently and repeatedly being asked and required to produce medical documentation, that also included requests for Ergonomic Evaluations of Plaintiff's Work Areas," while "[a]ll others in the Region . . . were steadily, consistently and repeatedly receiving Ergonomic Reasonable Accommodations."  Compl. 16, ¶ 1.

- Plaintiff's Rehabilitation Act claim alleges that her pre-existing medical conditions were "aggravated and progressed through the Agency's failure to provide Plaintiff appropriate equipment to Plaintiff's work station as a reasonable accommodation," including "Plaintiff still having the same keyboard since May 2000."  Compl. 16, ¶ 3.

To the extent that any of Plaintiff's claims are premised on events that occurred before November 24, 2014, including the foregoing, the complaint fails to allege that Plaintiff exhausted administrative remedies as to those events.

In her opposition, Plaintiff submits a document from an administrative judge presumably to demonstrate that she contacted an EEO counselor regarding conduct that occurred prior to November 24, 2014.  *See* Opp'n 2-3.  However, her complaint as currently pleaded does not contain any allegations about the precise date(s) Plaintiff contacted an EEO counselor, including any contact about conduct that occurred before November 24, 2014.  The court cannot consider the document attached to Plaintiff's opposition or Plaintiff's argument based on that document. *See Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").  As the court instructed Plaintiff at the hearing, an amended complaint should clearly set forth each of her claims and should also provide the date(s) she made contact with an EEO counselor about each of her claims.

As to Plaintiff's hostile work environment claim, under *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002), a hostile work environment claim is timely as long as "an act contributing to the claim occurs within the filing period." However, plaintiff may not sue for discrete acts of discrimination (such as failure to promote) that occurred outside the limitations period solely because they are related to other discrete acts that occurred inside the limitations period. *Id*. at 113-14. "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Because each discrete act starts a new clock for filing charges alleging that act, the charge must be filed within the 180– or 300–day period after the act occurred." *Id*. at 102.

Plaintiff is granted leave to file an amended complaint that clearly alleges the date(s) she contacted an EEO counselor, and that clearly alleges the events and conduct that support each of her claims for relief, including the dates of such events and conduct.

## 2.    ADEA Claim

The ADEA also requires administrative exhaustion. An employee must notify an EEO counselor within 45 days of the alleged discriminatory conduct in order to satisfy the exhaustion requirement. *Whitman v. Mineta*, 541 F.3d 929, 932 (9th Cir. 2008). In the alternative, the individual must give the EEOC notice of the alleged discriminatory act within 180 days and give notice of her intent to sue at least thirty days before commencing suit in a federal court. *Id*. (citing 29 U.S.C. §§ 633a(c), (d)).

Here, Plaintiff does not allege that she gave notice to the EEOC of the alleged discriminatory act(s) and appears to be relying on the 45-day EEO process. Accordingly, as currently pleaded, Plaintiff's ADEA claim is exhausted only as to events that occurred after November 24, 2014. As with her Title VII and Rehabilitation Act claims, Plaintiff is granted leave to file an amended complaint that clearly alleges the date(s) she contacted an EEO counselor regarding the events that form the basis for her ADEA claim, and/or whether she gave the EEOC notice of the alleged discriminatory act(s) and her intent to sue.

United States District Court
Northern District of California

**B.     Failure to State a Claim**

**1.  Title VII Disparate Treatment Claim**

"Title VII is the exclusive remedy for discrimination by the federal government on the basis of race, religion, sex or national origin." *Boyd v. U.S. Postal Serv.*, 752 F.2d 410, 413-14 (9th Cir. 1985).  It provides that it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment." 42 U.S.C. § 2000e–2(a)(1).  To state a claim for employment discrimination based on race, color, national origin, and sex, Plaintiff must allege that (1) she is a member of a protected class, (2) she was performing her job in a satisfactory manner, (3) she suffered an adverse employment action, and (4) she was treated differently than similarly situated persons outside the protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Here, Plaintiff appears to challenge four alleged adverse employment actions.  As to the first two, Plaintiff claims that Defendant failed to provide Plaintiff with an ergonomic chair "in a timely manner, in the same manner as similar situated Administrative Support Staff," and also failed to provide her with an ergonomic keyboard.  Compl. 5-6, 15.  Defendant argues that this alleged conduct is not an adverse employment action under Title VII.  Mot. 12.  An adverse employment action is one that "materially affect[s] the compensation, terms, conditions, or privileges of the [plaintiff's] employment." *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1126 (9th Cir. 2000).  "An adverse employment action must be significant, and trivial harms such as petty slights or minor annoyances are not actionable." *Green v. City & Cnty. of San Francisco*, No. 17-CV-00607-TSH, 2021 WL 3810243, at *32 (N.D. Cal. Aug. 26, 2021) (citing *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).  "Examples of significant adverse actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Green*, 2021 WL 3810243, at *32. Plaintiff does not allege that the failure to provide her with an ergonomic chair and keyboard "materially affected" the terms of her employment and does not respond to Defendant's argument

1   that this conduct is not a cognizable adverse action.  Accordingly, Plaintiff's Title VII claim based

2   on the failure to provide Plaintiff with an ergonomic chair and keyboard is dismissed with leave to

3   amend.

4        For the third adverse action, Plaintiff appears to allege that Defendant failed to assign her

5   to training that represented a "promotional opportunity."  Compl. 7.  Plaintiff cites an email that

6   discusses training assignments for the three other individuals in her position, Program Support

7   Assistant.  Two of those individuals are Asian and the third is white.  *Id.* at 7, 13; Ex. 17.  Plaintiff

8   notes that she was not listed in the training rotation and alleges that she was "over looked during

9   the time period, 01/2009 to 02/2015; and it continues to date."  Compl. 7.  However, Plaintiff does

10   not allege that the failure to receive training affected a material condition of her employment, or

11   that it materially impacted her position, compensation, or some other term of her employment.

12   Accordingly, Plaintiff's Title VII claim based on the failure to provide Plaintiff with training is

13   dismissed with leave to amend.

14        Fourth and finally, Plaintiff alleges that she failed to receive "a Promotion; With In-Grade-

15   Increase; Step-Increase," and that the other three Program Support Assistants "have, over the years

16   received, Promotions; With In-Grade-Increases; Step-Increases."  Compl. 4, 15.  As noted, the

17   other Program Support Assistants are Asian and white.  While a failure to promote and provide

18   pay increases may constitute adverse employment actions, Plaintiff does not allege facts

19   supporting her claim that she was treated differently on account of her race, color, national origin,

20   or sex with respect to this claim, other than noting that non-African-American individuals received

21   promotions and pay increases.  Specifically, she does not allege that she applied for promotions or

22   vacant positions and that Defendant denied her requests or applications, or allege facts about the

23   employment of the other Program Support Assistants to support the inference that they received

24   pay increases to which she was also entitled.  In her opposition, Plaintiff concedes that she "cannot

25   state, at this time, if Plaintiff has sufficient records of positions and vacancies applied for down

26   through the years" to support her Title VII disparate treatment claim.  Opp'n 4.  However, in order

27   to state a plausible claim for disparate treatment, Plaintiff must offer more than conclusory

28   statements that a person outside her protected class was treated differently than she was.  *See*

United States District Court
Northern District of California

1   *Heyer v. Governing Bd. of Mt. Diablo Unified Sch. Dist.*, 521 F. App'x 599, 601 (9th Cir. 2013)

2   (holding that plaintiff failed to plead plausible race discrimination claim because "[a]part from

3   conclusory statements, Heyer makes no factual assertion in his FAC that he was replaced by a

4   person of another race or that a person of another race was otherwise treated differently than he

5   was."). Accordingly, the Title VII claim based on promotions and pay increases is dismissed with

6   leave to amend.

7                   **2.      ADEA Disparate Treatment Claim**

8          The ADEA makes it unlawful "to fail or refuse to hire or to discharge any individual or

9   otherwise discriminate against any individual with respect to his compensation, terms, conditions,

10  or privileges of employment, because of such individual's age." 29 U.S.C.A. § 623(a)(1). A

11  failure to promote claim is a claim of disparate treatment under the ADEA. *Shelley v. Geren*, 666

12  F.3d 599, 606 (9th Cir. 2012). "In a failure-to-promote case, a plaintiff may establish a prima

13  facie case of discrimination in violation of the ADEA by producing evidence that he or she was

14  (1) at least forty years old, (2) qualified for the position for which an application was submitted,

15  (3) denied the position, and (4) the promotion was given to a substantially younger person." *Id.* at

16  608.

17         Here, the complaint does not allege any facts supporting the inference that Plaintiff was

18  treated differently in terms of her "compensation, terms, conditions, or privileges of employment"

19  or was not given promotions "because of" her age. She alleges that she "is over 40 and older than

20  all Administrative Support Staff/Program Support Assistants," but does not allege that her

21  comparators are "substantially younger" or any other facts supporting a reasonable inference that

22  she was treated differently based on her age. Accordingly, the ADEA claim is dismissed with

23  leave to amend.

24                  **3.      Rehabilitation Act Claim**

25         The Rehabilitation Act provides the exclusive remedy for federal employees alleging

26  disability discrimination. *Johnston v. Horne,* 875 F.2d 1415, 1420 (9th Cir.1989), *overruled on*

27  *other grounds by Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89 (1990). Courts use the standards

28  applied under the Americans with Disabilities Act ("ADA") to determine whether a violation of

United States District Court
Northern District of California

United States District Court
Northern District of California

1   the Rehabilitation Act occurred in the federal employment context. *Lopez v. Johnson,* 333 F.3d

2   959, 961 (9th Cir. 2003) ("Section 501 borrows its substantive standards from the Americans with

3   Disabilities Act (ADA)." (citing 29 U.S.C. § 791(g)); *see also Coons v. Sec'y of the U.S. Dept. of*

4   Treasury, 383 F.3d 879, 884 (9th Cir. 2004) ("The standards used to determine whether an act of

5   discrimination violated the Rehabilitation Act are the same standards applied under the Americans

6   with Disabilities Act").

### a.     Disability Discrimination

7

8       In order to state a disability discrimination claim under the Rehabilitation Act, a plaintiff

9   must allege that "(1) she is a person with a disability, (2) who is otherwise qualified for

10  employment, and (3) suffered discrimination because of her disability." *Walton v. U.S. Marshals*

11  *Serv*., 492 F.3d 998, 1005 (9th Cir. 2007).  For purposes of the Rehabilitation Act, "disability" is

12  defined as "(A) a physical or mental impairment that substantially limits one or more of the major

13  life activities of such individual, (B) a record of such an impairment, or (C) being regarded as

14  having such an impairment." *Id*. (citing 42 U.S.C. § 12102(2)).

15      Here, the complaint does not allege facts supporting a reasonable inference that Plaintiff

16  experienced adverse employment actions *because of* her disability.  *See Abdul-Haqq v. Kaiser*

17  *Emergency in San Leandro*, No. 16-CV-05454-PJH, 2017 WL 1549480, at *8 (N.D. Cal. May 1,

18  2017) (holding that in order to state a claim for disability discrimination, a plaintiff must allege

19  that she "was subjected to an adverse employment action . . . because of her disability." (citations

20  omitted)).  Accordingly, Plaintiff's disability discrimination claim is dismissed with leave to

21  amend.

### b.     Failure to Accommodate

22

23      In order to state a claim under the Rehabilitation Act for failure to accommodate a

24  disability, a plaintiff must show that (1) she is disabled; (2) she is a qualified individual, meaning

25  that she could meet the essential requirements of the position with or without reasonable

26  accommodation; and (3) a reasonable accommodation is possible.  *Zukle v. Regents of the Univ. of*

27  *Cal.*, 166 F.3d 1041, 1045 (9th Cir. 1999); *Buckingham v. United States*, 998 F.2d 735, 739-40

28  (9th Cir. 1993).  A "reasonable accommodation" is defined as "modifications or adjustments to the

1   work environment, or to the manner or circumstances under which the position held or desired is

2   customarily performed, that enable a qualified individual with a disability to perform the essential

3   functions of that position."  29 C.F.R. § 1630.2(o)(1)(ii).

4          Plaintiff's failure to accommodate claim appears to be based on her allegations that she

5   requested an ergonomic chair and was not provided with one until 2015.  Defendant argues that

6   the claim must be dismissed because the complaint does not plausibly allege that Plaintiff put her

7   supervisors on notice that she was seeking a reasonable accommodation, and because she "took no

8   actions to notify her supervisors that she did not receive the approved ergonomic chair until 2014"

9   or request additional equipment.  Mot. 15.  Defendant also argues that it "did not refuse to make

10  any requested accommodation."  However, this ignores that in Exhibit 2, a Human Resources

11  professional acknowledges receiving "the accommodation request for an ergonomic chair" and

12  states that it has been approved, and that the complaint alleges that Defendant failed to provide the

13  approved chair until 2015.  Defendant offers no authority that Plaintiff was required to notify her

14  supervisors that she did not receive the chair even after it was approved and does not make any

15  other arguments in favor of dismissal of this claim.  The motion to dismiss the failure to

16  accommodate claim as inadequately pleaded is denied.

17                     **4.      Hostile Work Environment**

18         In order to state a claim for hostile work environment, Plaintiff must allege that 1) she

19  "was subjected to verbal or physical conduct because of" her protected characteristics, 2) "the

20  conduct was unwelcome," and 3) "the conduct was sufficiently severe or pervasive to alter the

21  conditions of [her] employment and create an abusive work environment."  *Johnson v. Riverside*

22  *Healthcare Sys., LP*, 534 F.3d 1116, 1122 (9th Cir. 2008) (quoting *Manatt v. Bank of Am.*, 339

23  F.3d 792, 797 (9th Cir. 2003)) (Title VII); *Sischo-Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d

24  1104, 1109 (9th Cir. 1991), *superseded on other grounds as explained in Dominguez–Curry v.*

25  *Nev. Transp. Dep't*, 424 F.3d 1027, 1041 (9th Cir. 2005) (holding that "[a] plaintiff may show

26  violations of [Title VII and the ADEA] by proving disparate treatment or disparate impact, or by

27  proving the existence of a hostile work environment."); *Williams v. Modly*, 796 F. App'x 378, 381

28  (9th Cir. 2020) (assuming without deciding that "a hostile work environment claim exists in the

United States District Court
Northern District of California

12

context of the Rehabilitation Act").  In order to prove harassment causing a hostile work environment, a plaintiff must show that "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment[.]'" *Fowler v. Potter*, No. C 06-04716 SBA, 2008 WL 2383073, at *9 (N.D. Cal. June 9, 2008) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002)).  Courts are "to determine whether an environment is sufficiently hostile or abusive by looking at all the circumstances, including the frequency of the discriminatory conduct, its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *See Faragher v. City of Boca Raton,* 524 U.S. 775, 787-88 (1998).

To the extent that this claim is based upon Defendant's delayed provision of an ergonomic chair and failure to promote Plaintiff, the complaint fails to allege sufficient details to support an inference that the conduct was "sufficiently severe or pervasive to alter the conditions of" Plaintiff's employment or that it the alleged harassment was because of Plaintiff's membership in a protected group.  Accordingly, the hostile work environment claim is dismissed with leave to amend.

### 5.    Retaliation

To establish a prima facie case of retaliation, Plaintiff must allege that 1) she engaged in a protected activity, 2) her employer subjected her to an adverse employment action, and 3) there is a causal link between the protected activity and the adverse action.  *Villiarimo v. Aloha Island Air, Inc.*, 781 F.3d 1054, 1064 (9th Cir. 2002)) (retaliation elements under Title VII); *see also Poland v. Chertoff*, 494 F.3d 1174, 1179-80 (9th Cir. 2007) (ADEA); *Coons v. Sec'y of U.S. Dep't of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004) (Rehabilitation Act).

The complaint does not clearly allege what protected activities Plaintiff believes were the subject of retaliation by Defendant and fails to allege a causal link between any protected activity and the adverse action.  In order to state a claim for retaliation, Plaintiff must identify the protected activity in which she engaged and allege facts to support a causal connection between the protected activity and any adverse action.  The retaliation claim is dismissed with leave to

United States District Court
Northern District of California

amend.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted.  Plaintiff's complaint is dismissed with leave to amend.  Any amended complaint must be filed within 21 days of the date of this order.

The court refers Plaintiff to the section "Representing Yourself" on the Court's website, located at https://cand.uscourts.gov/pro-se-litigants/, as well as the Court's Legal Help Centers for unrepresented parties.  Parties may schedule an appointment by calling 415-782-8982 or emailing fedpro@sfbar.org.

**IT IS SO ORDERED.**

Dated: October 18, 2023



Donna M. Ryu
Chief Magistrate Judge